RHONDA K. WOOD, Associate Justice 11 Michael Feuget appeals the denial of his petition for postconviction relief under Arkansas Rule of Criminal Procedure 37. Feuget contends he received ineffective assistance of counsel during his trial because: (1) his attorneys failed to present certain witness testimony to corroborate his affirmative defense of involuntary intoxication and impeach the testimony of an adverse witness; and (2) his attorneys failed to request a jury instruction on a lesser-ineluded offense. We affirm the circuit court’s ruling. I. Relevant Facts Feuget robbed a bank on January 15, 2010. At trial, he defended on the theory that he was involuntarily intoxicated at the time of the robbery due to the combination of prescription medications he was taking. Feuget testified that in addition to taking Zoloft and Adderall, his psychiatrist, Dr. Joe Bradley, prescribed the drug Deplin approximately one week before the robbery. Feuget’s expert, Dr. Bob Gale, opined that the combination |aof Zoloft and Deplin caused Feuget to enter a toxic state in which he was unable to conform his conduct to the requirements of the law. Dr. Bradley testified extensively about Feuget’s treatment and prescription history over the three previous years. Dr. Bradley explained that he gave Feuget Deplin samples in an effort to boost the effectiveness of Feuget’s Zoloft regimen. Dr. Bradley testified that he gave Feuget a month’s worth of Deplin samples in December 2009, but that he did not remember actually writing a prescription for the drug. He readily acknowledged that it was possible he did also prescribe it. Dr. Bradley also testified that he saw Feuget a week before the robbery and that Feuget reported very minimal benefit from taking the Deplin. The conflicting testimony regarding the Deplin prescription is at the heart of the first contention on appeal. Feuget’s wife testified in rebuttal that she handled all of Feuget’s medications. She testified that Feuget received a Deplin prescription and that she had filled it a week before the robbery. Feuget’s counsel attempted to admit the prescription bottle into evidence, but it was excluded due to the State’s hearsay objection. After the jury began deliberations, Feuget obtained a copy of the written prescription and moved for a mistrial. The motion was denied, and Feuget was convicted of theft of property and two counts of aggravated robbery. Feuget subsequently requested a new trial, relying on the prescription copy and other pharmacy records corroborating the testimony that there was a prescription for Deplin in addition to the samples. At the hearing on the motion, Dr. Bradley admitted that his testimony at trial was apparently inaccurate and that he must have given Feuget the prescription. Dr. Bradley further testified that clinical studies have shown that the |3dosage of Deplin that he prescribed is no more effective than a placebo. The court denied the motion for a new trial, and the court of appeals affirmed Feuget’s conviction. Feuget v. State, 2012 Ark. App. 182, 394 S.W.3d 310. Feuget next sought postconviction relief, alleging that he received ineffective assistance of counsel because his attorneys failed to subpoena the prescription records from the pharmacy and failed to subpoena a pharmacy employee who could authenticate the records. Feuget also claimed that he was denied effective assistance of counsel because his attorneys did not request a jury instruction on the lesser-included offense of robbery, causing Feuget to be convicted of the greater offense of aggravated robbery. The circuit court denied Feuget’s petition, and this appeal followed. II. Standard of Review We do not reverse the grant or denial of postconviction relief unless the circuit court’s findings are clearly erroneous. Sales v. State, 2014 Ark. 384, 441 S.W.3d 883. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. Id. We assess the effectiveness of counsel under the two-prong standard set forth by the Supreme Court of the United States in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Sartin v. State, 2012 Ark. 155, 400 S.W.3d 694. Under this standard, the petitioner must first show that counsel’s performance was deficient. Id. This requires a showing that counsel made errors so serious that counsel deprived the petitioner of the counsel guaranteed to the petitioner by the Sixth Amendment. Id. Second, the deficient performance must have resulted in prejudice so pronounced as to have deprived The petitioner a fair trial whose outcome cannot be relied on as just. Wainwright v. State, 307 Ark. 569, 823 S.W.2d 449 (1992). Both showings are necessary before it can be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. Id. There is a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance, and the petitioner has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel’s perspective at the time of trial, could not have been the result of reasonable professional judgment. Id. Even if counsel’s conduct is shown to be professionally unreasonable, the judgment will stand unless the petitioner demonstrates that the error had a prejudicial effect on the actual outcome of the proceeding. Henington v. State, 2012 Ark. 181, 403 S.W.3d 55. The petitioner must show that there is a reasonable probability that, but for counsel’s errors, the fact-finder would have had a reasonable doubt respecting guilt, or in other words, that the decision reached would have been different absent the errors. Id. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial. Id. In making this determination, the totality of the evidence before the fact-finder must be considered. Noel v. State, 342 Ark. 35, 26 S.W.3d 123 (2000). III. Presenting Additional Witnesses and Evidence For his first point, Feuget classifies Dr. Bradley’s testimony as false and claims that the failure to call a records custodian and subpoena pharmacy records to verify that Feuget |swas given a prescription for Deplin a week before the robbery vitiated his defense of involuntary intoxication. We disagree. Under our jurisprudence, a petitioner claiming ineffective assistance of counsel is required to state the substance of the omitted witness’s testimony and demonstrate that this omitted testimony resulted in actual prejudice to his defense. Wainwright, 307 Ark. at 579, 823 S.W.2d at 454. In this case, Feuget has demonstrated that the pharmacy witness would have authenticated his prescriptions and contradicted Dr. Bradley’s testimony; however, we are not of the opinion that counsels’ failure to call the witness was such an unreasonable lapse in professional judgment that Feuget was denied effective counsel. The decision of whether or not to call a witness is generally a matter of trial strategy that is outside the purview of Rule 37. Nelson v. State, 344 Ark. 407, 39 S.W.3d 791 (2001) (per curiam). An attorney’s decision not to call a particular witness is largely a matter of professional judgment, and the fact that there was a witness or witnesses who could have offered testimony beneficial to the defense is not, in itself, proof of ineffectiveness. Lee v. State, 2009 Ark. 255, 308 S.W.3d 596. In this case, Dr. Bradley testified at length concerning Feuget’s multiple medication changes over a three-year period, and he readily acknowledged that it was possible he had also written Feuget a prescription for Deplin in addition to providing him with samples of the drug. Feuget presented rebuttal testimony from his wife that he had received and she had filled a prescription for Deplin approximately one week before the robbery. Feuget, himself, also testified to this fact. Feuget’s expert similarly testified that Feuget had been prescribed Deplin and was taking it at the time of the robbery, as did Dr. Lisa Do-guet, who |fiperformed a court-ordered evaluation of Feuget to determine his competency to stand trial. In short, Feuget presented the same evidence to which a pharmacy witness would have testified if one had been called, and we cannot conclude that failing to call an additional witness on the topic rises to the level of ineffective assistance of counsel. Furthermore, under our standard or review, Feuget must demonstrate actual prejudice resulting from his counsel’s failure to call a witness to verify the date of his prescription. Mere allegations that the jury would have been swayed by additional testimony are conclusory. Wainwright, 307 Ark. at 579, 823 S.W.2d at 454. Feu-get has failed to show how presenting cumulative testimony regarding the date of his prescription would have created a reasonable probability that the outcome of his trial would have been different. We cannot ignore that although Dr. Bradley admitted that he was mistaken about whether he had actually written a prescription for Deplin, he also testified that studies had shown that the dosage of Deplin he prescribed would only have had a placebo effect. He also reiterated that Feuget reported that the Deplin had minimal effect. The other expert witnesses at trial did not contest that Feuget was taking prescription Deplin at the time he committed the robbery; they simply did not believe that the Deplin made a difference. For example, Dr. Kim Light, a pharmacologist, testified that the Deplin would have had no impact and that Feuget was not intoxicated on the drugs that he was taking at the time of the robbery. Dr. Do-guet accepted that Feuget was taking Deplin and that he was intoxicated, but she still testified that Feuget clearly appreciated the criminality of his actions and was capable of conforming his conduct to the law based on his behavior |7before, during, and after committing the crime. Feuget’s own expert, Dr. Gale, testified that Feuget had been given a prescription for Deplin a few days prior to the robbery; however, even Dr. Gale acknowledged that there was some dispute among the medical community as to whether Deplin would enhance the effects of the other medications that Feuget was taking. Considering the other evidence presented to the jury, Feu-get is unable to show the existence of a reasonable probability that additional testimony showing that the prescription for Deplin was filled approximately one week before the robbery would have resulted in a different outcome. IV. Requesting Jury Instructions for a Lesser-included Offense For his next point, Feuget argues that there was scant evidence to support his use of a weapon during the robbery and that defense counsel was ineffective because his attorneys did not request a jury instruction for the lesser-included offense of robbery. The circuit court’s order denying postconviction relief concedes that a jury instruction on simple robbery would have been proper given the evidence. Ultimately, this argument is to no avail. Matters of trial tactics and strategy are not grounds for postconviction relief on the basis of ineffective assistance of counsel. Rankin v. State, 365 Ark. 255, 227 S.W.3d 924 (2006). This court has long recognized that competent counsel may elect not to request an instruction on lesser-included offenses as a matter of strategy. Henderson v. State, 281 Ark. 406, 664 S.W.2d 451 (1984) (per curiam). This “all-or-nothing” approach recognizes the strategic consideration that a jury may be more likely to find in a defendant’s favor when the only options are guilty and not guilty, rather than a possible compromise verdict on a lesser offense. Id. While the trial court may err to refuse ^instructions on a lesser-included offense where the defense is not inconsistent with those instructions, counsel is not ineffective merely because an all-or-nothing strategy fails. Johnson v. State, 2009 Ark. 460, 344 S.W.3d 74 (per curiam). The record reflects that counsel discussed with Feuget the possibility of moving to reduce the charges and instructing the jury on the lesser-included offense of robbery and, in fact, recommended this strategy. Counsel even went so far as to prepare the actual instruction. However, the record reflects that Feuget intentionally chose to forego this option because he believed the jury would acquit, and he did not want to give them another option to convict him of a lesser-included offense. Feuget cannot now claim that he received ineffective assistance of counsel when he made the very decision — about which he now complains — against the advice of counsel. Feuget also argues that it was incumbent upon his attorneys to pursue the lesser-included offense even against his wishes; however, Feuget never presented this argument to the circuit court. On appeal, an appellant is limited to the scope and nature of the arguments he made below and that were considered by the circuit court in rendering its ruling. Barker v. State, 2014 Ark. 467, 448 S.W.3d 197 (per curiam). We will not consider new arguments raised for the first time on appeal. Id. Accordingly, we will not address this argument. Affirmed. Hannah, C.J., and Danielson, J., concur.